IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 92-8363

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

FROILAN ROSALEZ-OROZCO,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

(November 16, 1993)

Before KING and BARKSDALE, Circuit Judges, and DUPLANTIER,*
District Judge.

DUPLANTIER, District Judge:

Defendant Froilan Rosalez-Orozco appeals his convictions for
conspiracy to import marijuana, 21 U.S.C. §§ 952(1), 960(a)(1) &
963, conspiracy to possess marijuana with intent to distribute, 21
U.S.C. §§ 841(a)(1) & 846, and possession of marijuana with intent
to distribute, 21 U.S.C. § 841(a)(1).  Rosalez was acquitted of a
fourth count, importation of marijuana.  Rosalez's principal
contention is that his trial counsel was ineffective because he
failed to move for a judgment of acquittal at the close of the
evidence.  In the alternative, Rosalez argues that even in the
absence of a motion at trial for judgment of acquittal, his

* District Judge of the Eastern District of Louisiana, sitting by
designation.

convictions cannot stand because a rational jury could not have found that the evidence established guilt beyond a reasonable doubt.  We affirm the convictions.

I. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is ordinarily not reviewed on direct appeal unless it has been addressed by the district court.  United States v. Armendariz-Mata, 949 F.2d 151, 156 (5th Cir. 1991), cert. denied, 112 S.Ct. 2288 (1992).  "Only when the record is sufficiently developed with respect to such a claim, will we determine [on direct appeal] the merits of the claim."  United States v. Freeze, 707 F.2d 132, 138 (5th Cir. 1983).  In the interest of efficiency, we will review Rosalez's ineffective assistance of counsel claim on this direct appeal because the record contains all of the evidence that could be developed with respect to Rosalez's claim that his trial counsel was ineffective.

To prevail on his ineffective assistance claim, Rosalez must establish that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  "If proof of one element is lacking, the court need not examine the other."  Kirkpatrick v. Blackburn, 777 F.2d 272, 285 (5th Cir. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907 (1986).  "To establish prejudice, [Rosalez] must show that 'there is a

2

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Anderson, 987 F.2d 251, 261 (5th Cir. 1993)(quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2068), cert. denied, 1993 U.S. Lexis 5513, 62 U.S.L.W. 3247 (1993).

In order to establish prejudice, Rosalez must show that it is a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted on the basis of insufficiency of evidence. See Fed. R. Crim. Pro. 29(a)(judgment of acquittal justified only when evidence insufficient); see also Burston v. Caldwell, 506 F.2d 24, 28 (5th Cir.)(failure to move for directed verdict does not render counsel ineffective "where there was possibly sufficient evidence of guilt to support the verdict and no reason to believe that such a motion would be granted"), cert. denied, 421 U.S. 990, 95 S.Ct. 1995 (1975); United States v. Fruge, 495 F.2d 557, 558 (5th Cir. 1974)(per curiam)(same).

To address the prejudice element of the ineffective counsel claim, we must evaluate the sufficiency of the evidence as if counsel had moved for judgment of acquittal at the close of the evidence. Accordingly, we must determine "whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir.), cert. denied, 112 S. Ct. 2952 (1992) (citations omitted). The

3

evidence need not "exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt."  Id.  Furthermore, "[w]e review circumstantial evidence under the same standard as direct evidence."  United States v. Triplett, 922 F.2d 1174, 1180 (5th Cir.), cert. denied, 111 S.Ct. 2245 (1991).

To support each of Rosalez's conspiracy convictions, the government had to prove beyond a reasonable doubt that a conspiracy existed and that Rosalez agreed to participate in it.  See United States v. Maceo, 947 F.2d 1191, 1197 (5th Cir. 1991), cert. denied sub nom. Bauman v. United States, 112 S.Ct. 1510 (1992). Defendant's conviction on the possession charge required the government to prove that the defendant knowingly possessed marijuana with the intent to distribute it.  See United States v. Shabazz, 993 F.2d 431, 441 (5th Cir. 1993).

In support of his challenge to the sufficiency of the evidence, Rosalez makes a "mere presence" argument.  He contends that the evidence against him proves nothing more than that he was present at the scene of a crime--not that he actually participated in the crimes for which he was convicted.  Rosalez points out that no one ever identified him as one of the men carrying a sack of marijuana across the river and that four of his alleged co-conspirators testified that they had never seen him before. Rosalez also argues that the fact that the jury acquitted him on the substantive count charging importation of marijuana

4

demonstrates that the evidence was insufficient to sustain his convictions on the remaining counts.

A review of the evidence against Rosalez reveals that it is clearly sufficient to sustain his convictions. Agent Scott Morris of the United States Border Patrol detected two groups of individuals on the Mexican side of the Rio Grande River at Las Pampas Crossing, a popular point of entry into the United States for drug smugglers. One group consisted of three men; the second group contained eight men, seven of whom were carrying large bundles on their shoulders. Upon crossing into the United States, the eight-man group headed towards Las Pampas Colonias, a residential area adjacent to the river, while the three-man group remained along the bank of the river. When border patrol agents moved in, the eight-man group scattered into Las Pampas Colonias. Agents subsequently apprehended seven men in Las Pampas Colonias, including Rosalez. Agents also seized seven sacks which contained altogether approximately two hundred and forty-two pounds of marijuana.

Border patrol agent Fernando Lucero discovered Rosalez inside an unlit garage-like shed. Lucero also found a burlap bag containing thirty pounds of marijuana directly outside of this shed, leaning against the wall beside the only unlocked door. Lucero discovered two additional marijuana bundles in another shed approximately ten to fifteen feet away from Rosalez's location. Rosalez was the only person apprehended in the immediate vicinity of these three bundles.

On the night of his arrest, Rosalez was questioned about his presence in the shed. At first Rosalez said that he had crossed the river only a half hour before his arrest. Later, Rosalez claimed that he had crossed the river four hours prior to his arrest. Notwithstanding Rosalez's statements as to the length of time he spent in the shed, Agent Lucero testified that when he found Rosalez, Rosalez's pants were wet from the knees down. It was a dry night, and this degree of dampness was comparable to that of the six other men arrested. The water level indicated by Rosalez's pants was consistent with the level of the river at the time of his arrest. Significantly, Agent Morris testified that no one had either been seen crossing the border or been detected on the American side of the river by electronic sensor prior to Morris' sighting of the men with the sacks.

Rosalez initially told agents that he was waiting in the shed for a girl-friend to arrive from Las Cruces, New Mexico. He later said she was coming from Mesquite, New Mexico. Rosalez also told agents that he knew the owner of the shed in which he was found. However, the shed's owner testified that she had never met Rosalez. Furthermore, although he did not present it to Agent Lucero, Rosalez possessed a valid border crossing card at the time of his arrest. This card could have permitted him to enter the United States through any official entry port. Rosalez claimed that he crossed the river illegally at Las Pampas because it was easier for him to cross there than at an official entry port. Agent Morris testified that five miles down-river from Las Pampas was a point at

which wooden flood-gates would have allowed Rosalez to cross without getting wet and without wading through a sewage drainage ditch as he did at Las Pampas.

Rosalez did not testify at trial. The defense called to the stand four of Rosalez's alleged co-conspirators. All four had pleaded guilty to importation of marijuana. These men recounted how they had been recruited by a stranger in Mexico who offered them $150.00 to carry the marijuana into the United States. All four testified that while they themselves participated in the smuggling scheme, they did not know Rosalez and had never met him before.

It is clear from the evidence that a conspiracy to smuggle marijuana across the border at Las Pampas did exist. The only dispute is whether the evidence revealed Rosalez as a knowing participant in that conspiracy. Evidence of mere presence at the scene of a crime is never enough to convict. See United States v. Davis, 666 F.2d 195, 201 (5th Cir. 1982). Nevertheless, the task of determining the sufficiency of the evidence "requires an examination of all the proved circumstances, including presence, to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation." United States v. Henry, 849 F.2d 1534, 1537 (5th Cir. 1988)(quoting United States v. Cruz-Valdez, 773 F.2d 1541, 1545 (11th Cir 1985)(en banc), cert. denied sub nom. Ariza-Fuentas v. United States, 475 U.S. 1049, 106 S.Ct. 1272 (1986)). We conclude that Rosalez's presence at the scene of the crime, together with the

suspicious circumstances surrounding his presence in the shed and his implausible explanation,[1] entitled the jury to infer that Rosalez was not only present at the scene, but knowingly participated in the smuggling of marijuana across the river with his co-conspirators. The same circumstantial indicia of Rosalez's participation in the conspiracy support the reasonable inference that he had knowledge of the marijuana found outside the shed, as well as the ability to reduce it to actual possession, and therefore he had constructive possession of it. See United States v. Posner, 868 F.2d 720, 723 (5th Cir. 1989).

While the government's evidence was rebutted by the testimony of Rosalez's four alleged co-conspirators, "the appellate court's role does not extend to weighing the evidence or assessing the credibility of witnesses[,]" United States v. Casel, 995 F.2d 1299, 1303 (5th Cir. 1993), and "any conflicts in the evidence must be resolved in favor of the verdict." United States v. Duncan, 919 F.2d 981, 990 (5th Cir. 1990), cert. denied, 111 S.Ct. 2036 (1991).

Finally, the fact that the jury acquitted Rosalez of importation does not alter our conclusion as to the sufficiency of the evidence supporting his convictions. Given the evidence, the jury could have believed that the government failed to prove that Rosalez was one of the individuals who physically carried a sack of

---

[1] "'[A] less-than-credible explanation' is 'part of the overall circumstantial evidence'" from which the elements of the crime can be inferred. United States v. Richardson, 848 F.2d 509, 513 (5th Cir. 1988)(quoting United States v. Phillips, 496 F.2d 1395, 1398 n.6 (5th Cir. 1974)).

marijuana across the river on his back.[2]  This does not change the fact that the evidence was sufficient as to the remaining counts. Moreover, even if we were to view the acquittal as inconsistent with the convictions, "a jury may return inconsistent verdicts in a criminal case, even where the inconsistency is the result of mistake or compromise."  United States v. Williams, 998 F.2d 258, 262 (5th Cir. 1993).

Because the evidence was amply sufficient to support Rosalez's convictions, we conclude that Rosalez has not shown that he was prejudiced by trial counsel's failure to move for a judgment of acquittal at the close of the evidence.

II. Sufficiency of the Evidence

When counsel fails to move for a judgment of acquittal, "we may set aside the conviction only if an affirmance would result in a 'manifest miscarriage of justice.'"  United States v. El-Zoubi, 993 F.2d 442, 445 (5th Cir. 1993).  This occurs only if the record is devoid of evidence pointing to guilt.  Id.  As discussed above, there was ample evidence supporting Rosalez's convictions. Therefore, Rosalez's convictions on the basis of the evidence at trial do not result in a "manifest miscarriage of justice."

---

[2] The jury instructions explained that in order to convict for importation, the jury had to find that Rosalez "brought" marijuana into the United States.  The jury inquired several times during deliberations whether the term "brought" involved the actual physical carrying of the marijuana.  The jury was instructed by the district court to give the term its ordinary meaning.

9

III. <u>Conclusion</u>

We conclude that Rosalez was not deprived of effective assistance of counsel and that his convictions are supported by sufficient evidence.  Accordingly, his convictions are AFFIRMED.