# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2009

Charles R. Fulbruge III
Clerk

No. 07-40442

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FRANCIS JAVIER RAMIREZ, also known as Javier Antonio Ramirez, also known as Javier Antonio Ramirez-Cermeno, also known as Javier Mario Lopez, also known as Pelon

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Frances Javier Ramirez appeals his sentence imposed on a charge of illegal reentry of a deported alien. Our decisions in this appeal are colored by the standard of review – plain error – which applies because the defendant did not raise the issues in this appeal before the district court. Under this standard, we find no plain error and affirm.

I.

Ramirez pleaded guilty without the benefit of a plea agreement to reentry of a deported alien. The presentence report (PSR) recommended a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a). The PSR further recommended a 16-

level adjustment pursuant to § 2L1.2(b)(1)(A)(ii) based upon a 2003 New Jersey conviction for aggravated assault, which the PSR characterized as a "crime of violence" (COV). After a three-level reduction for acceptance of responsibility, Ramirez's total offense level was 21. His total offense level of 21 and criminal history category of IV resulted in an advisory guidelines range of imprisonment of 57 to 71 months.

Ramirez objected to the 16-level adjustment on the ground that the alleged New Jersey conviction was not supported by sufficient documentation. In response to that objection, the probation officer obtained further documentation regarding that conviction. Ramirez then withdrew his objection. At sentencing, the district court held that the prior conviction for aggravated assault was properly considered in assessing the 16-level adjustment and that it had made an independent determination that the aggravated assault conviction met the definition of a COV offense. Ramirez was sentenced to 71 months of imprisonment and three years of supervised release. Ramirez filed a timely notice of appeal.

The Federal Public Defender (FPD) appointed to represent Ramirez on appeal filed a motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), but this court denied that motion and instructed the FPD to file a merits brief regarding the imposition of the 16-level § 2L1.2(b)(1)(A) adjustment based upon Ramirez's prior New Jersey conviction for aggravated assault.

## II.

In its appellate brief, the Government sua sponte informed the court that there may be an alternate ground on which Ramirez may challenge the 16-level enhancement based on this court's March 26, 2008, opinion in United States v. Rojas-Luna, 522 F.3d 502 , 506-07 (5th Cir. 2008). In Rojas-Luna this court held that the district court's use of the fact of Rojas-Luna's 2006 removal to increase his sentence beyond the statutory maximum sentence allowed under § 1326(a)

was reversible plain error because the fact of the 2006 removal had not been admitted by Rojas-Luna or proven beyond a reasonable doubt to a jury.

The threshold question is whether this court should address this potential error because the defendant did not raise it below or in his opening brief. This court does not entertain arguments raised for the first time in a reply brief. United States v. Aguirre-Villa, 460 F.3d 681, 683 n.2 (5th Cir. 2006). However, this court views the situation differently when a new issue is raised in the appellee's brief and the appellant responds in his reply brief. Cousin v. Trans Union Corp. 246 F.3d 359, n.22 (5th Cir. 2001) and Vallecillo v. United States HUD, 155 Fed. Appx. 764, 766 n.1 (5th Cir. 2005). In that situation, the court avoids the more unfair scenario that occurs when "an appellant raises a completely new issue in its reply brief, disadvantaging the appellee, and for which the procedural bar concerning initial briefs was properly developed and utilized." Cousin, 246 F.3d at 373. This situation is not present in this case because the government raised the issue presented by Rojas-Luna eliminating any surprise. At least one case suggests that this court has the discretion to address this issue. See Piney Woods Country Life School v. Shell Oil Co., 905 F.2d 840, 854 (5th Cir. 1990)(exercising discretion to address issues raised for the first time in a reply brief.) The Ninth Circuit has a specific rule that if the appellee raises an issue in its answering brief, the issue is joined and the court may consider it. Burlington Northern & Sante Fe Railway Company v. Vaughn, 509 F.3d 1085, 1093 (9th Cir. 2007). Applying this precedent, we exercise our discretion to address the merits of this issue.

Under 8 U.S.C. § 1326(a), the statutory maximum sentence for illegal reentry with no enhancements is two years in prison. If a defendant illegally reenters after a conviction for an aggravated felony and subsequent removal, the maximum sentence increases to twenty years. 8 U.S.C. § 1326(b)(2). In order for the higher sentence under 8 U.S.C. § 1326(b)(2) to apply, the defendant must

have been deported following the conviction for an aggravated felony. Under Rojas-Luna, the fact of the deportation must be admitted or proven to a jury beyond a reasonable doubt.

In Rojas-Luna, the defendant pleaded guilty to illegal reentry after removal. Rojas-Luna, 522 F.3d at 503. In accordance with the factual basis described by the Government, Rojas-Luna admitted at rearraignment that he had been deported in 1988 and had reentered the United States on or about May 30, 2006. Id. The district court applied § 1326(b)(2) based on the fact that Rojas-Luna was convicted of aggravated assault in 2003 and removed in 2006 following his prison term. Id.

In its review for plain error, this court noted that, because Rojas-Luna was not convicted of an aggravated felony until 2003, his 1988 removal could not be used as the basis for an enhancement under "§ 1326(b)(2), because it was not subsequent to his conviction." Id. at 504 (internal quotation marks and citation omitted). The court further noted that the § 1326(b)(2) enhancement to Rojas-Luna's sentence could only be supported by his 2006 removal. Id. However, because Rojas-Luna did not admit to the 2006 removal and because it increased his sentence above the two-year statutory maximum sentence of § 1326(a), the court determined that the district court committed Apprendi[1] error by applying the 16-level enhancement under § 1326(b)(2). Id. at 504-06. The court further determined that the error affected Rojas-Luna's substantial rights because it allowed the district court to sentence him above the two-year statutory maximum sentence of § 1326(a). Id. at 506. The district court also determined that the error affected the fairness of the judicial proceedings because the record did not contain overwhelming evidence of the fact of Rojas-Luna's 2006 removal.

---

[1] Apprendi v. New Jersey, 530 U.S. 466 (2000).

Id. at 507. The court thus elected to exercise its discretion to correct the error by vacating and remanding the case for resentencing. Id.

In the instant case, the PSR indicated that Ramirez was deported in 1998, 2002, and 2005. Only the 2005 deportation was subsequent to Ramirez's 2003 New Jersey conviction for aggravated assault. Because the indictment and factual basis for Ramirez's plea did not specify the date of removal, Ramirez's guilty plea based on these documents admits only that he had been previously deported without specifying a time frame. However, the PSR incorporated ICE records provided to the probation office by the government and set forth the details of Ramirez's three prior removals in 1998, 2002, and 2005. The ICE records were provided to Ramirez by the government. In addition, Ramirez and his counsel affirmed specifically that they had read the PSR, reviewed it for legal and factual accuracy, and made no objections to it.

Reliance on a PSR to establish sentencing facts that increases the penalty beyond the statutory maximum is clear and obvious error. United States v. Rojas-Luna, 522 F.3d 502 (5th Cir. 2008). However, reliance on a defendant's admission of facts that are contained in the PSR is permissible. United States v. Martinez-Vega, 471 F.3d 559, 563 (5th Cir. 2006). In Rojas-Luna, this court reached the conclusion that there was plain error because "there is no evidence in the record that Rojas-Luna ever agreed to the accuracy of the PSR." In addition the panel noted that the only evidence of the defendant's prior removal was the unsupported statement in the PSR that he was removed in 2006. In this case, in contrast, there is evidence that Ramirez agreed to the accuracy of the PSR and the facts of Ramirez's prior removals in the PSR were based on ICE documentation of Ramirez's prior deportations, which documents were provided to the defendant. In order to prevail on this issue, Ramirez must establish: "(1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights. Olano, 507 U.S. at 732-34, 113 S. Ct. at 1776-78. If these conditions are

met, this court can exercise its discretion to notice the forfeited error only if 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' Id. at 732, 113 S. Ct. at 1776 (internal quotation marks omitted)." United States v. Hernandez-Martinez, 485 F.3d 270, 273 (5th Cir. Tex. 2007).

On these facts, we find that there was no plain error. First, there was no error that was clear or obvious. Alternatively, any error did not affect the fairness, integrity or public reputation of the judicial proceedings. United States v. Cotton, 535 U.S. 625, 633 (2002)(Even though district court committed plain error by finding certain drug quantities that enhanced the defendants' sentences, the error would not be noticed because the evidence of drug quantity presented at trial was overwhelming and uncontroverted).

## III.

Ramirez also argues that his prior conviction for aggravated assault under New Jersey law is not a crime of violence for purposes for § 2L1.2(b)(1)(A)(ii). Because he raises this argument for the first time on appeal, plain error review applies. See United States v. Gonzalez-Ramirez, 477 F.3d 310, 311 (5th Cir. 2007).

Section 2L1.2(b)(1)(A)(ii) provides for a 16-level increase to a defendant's base offense level if he was previously deported after being convicted of a felony that is a COV. United States v. Cervantes-Blanco, 504 F.3d 576, 578-79 (5th Cir. 2007). The Application Notes define a COV as (1) any of a list of enumerated offenses, including "aggravated assault," or (2) "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2, comment. (n.1(B)(iii))). This court uses different tests when analyzing whether a particular offense amounts to a COV, and the test used depends on whether the offense is an enumerated one or has physical force as an element. United States v. Mendoza-Sanchez, 456 F.3d 479, 481-82 (5th Cir. 2006).

"Because the guidelines do not define 'aggravated assault,' this court applies a 'common sense approach,' defining the enumerated crime by its 'generic, contemporary meaning.'" United States v. Torres-Diaz, 438 F.3d 529, 536 (5th Cir. 2006) (citations omitted). "Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code." Id. For other sources of generic contemporary meaning, this court may consider, inter alia, "Professors LaFave and Scott's treatise, modern state cases, and dictionaries." United States v. Sanchez-Ruedas, 452 F.3d 409, 412 (5th Cir. 2006). State-law labels do not control this inquiry because the COV adjustment incorporates crimes with certain elements, not crimes that happen to have the same label under state law. Gonzalez-Ramirez, 477 F.3d at 313. "When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." United States v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir. 2006) (internal quotation marks and citation omitted). "In determining whether an offense has as an element the use, attempted use, or threatened use of physical force against the person of another, this court uses the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 600-02 . . . (1990), and examines the elements of the offense, rather than the facts underlying the conviction." Mendoza-Sanchez, 456 F.3d at 482. If this court's common-sense approach determines that the statute of conviction amounts to an enumerated COV, it is not necessary to engage in the second, categorical approach. United States v. Izaguirre-Flores, 405 F.3d 270, 274 (5th Cir. 2005). The government does not argue that Ramirez's prior conviction is a crime of violence because it has as an element the use of physical force.

Although there is some confusion in the record regarding which offense Ramirez was convicted of, the parties agree that Ramirez was actually convicted of aggravated assault under N.J. STAT. ANN. § 2C:12-1b(7) – a third degree

offense.[2]   Neither the indictment nor the judgment of conviction provide any details of Ramirez's aggravated assault offense

> N.J. STAT. ANN. § 2C:12-1b(7) states:
>
> A person is guilty of aggravated assault if he . . . Attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury.

N.J. STAT. ANN. § 2C:12-1b(7) (West 2001).  The Model Penal Code states:

> A person is guilty of aggravated assault if he:
> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

MODEL PENAL CODE § 211.1(2) (2001).

This court has not yet considered whether aggravated assault under N.J. STAT. ANN. § 2C:12-1b(7) constitutes a COV under § 2L1.2(b)(1)(A)(ii).[3]   In utilizing the common-sense approach to compare the two authorities, it is apparent that subsection (b) of MODEL PENAL CODE § 211.1(2) is not relevant because that subsection involves use of a deadly weapon, which is not applicable

---

[2]   Ramirez's New Jersey judgment of conviction indicates that he was convicted of aggravated assault, a third degree offense set forth in Count Two of his indictment, and that the applicable statutory section was N.J. STAT. ANN. § 2C: 12-1b(1).  However, Count Two in the indictment charged Ramirez with aggravated assault, a third degree crime, under N.J. STAT. ANN. § 2C:12-1b(7).  Aggravated assault under N.J. STAT. ANN. § 2C:12-1b(1) is a second degree offense.  N.J. STAT. ANN. § 2C:12-1b(11) (West 2001).

[3] Although the Tenth Circuit held in an unpublished opinion that a defendant was properly assessed a 16-level adjustment under § 2L1.2(b)(1)(A)(ii) based upon his New Jersey conviction for aggravated assault, that court did not specify under which New Jersey subsection the defendant had been convicted and did not engage in the common-sense approach.  United States v. Merino-Garcia, 278 Fed.Appx. 856 (10th Cir. 2008) (unpublished).  Merino-Garcia is not binding precedent and does not provide any helpful guidance regarding this issue.

in the New Jersey statutory section at issue here. The authorities are alike in that they have a similar intent - "purposely, knowingly or recklessly" "under circumstances manifesting extreme indifference to the value of human life". The statutes differ in the following respect: MODEL PENAL CODE § 211.1(2)(a) requires "serious bodily injury" and N.J. STAT. ANN. § 2C:12-1b(7) requires "<u>significant</u> bodily injury." (Emphasis added). The Model Penal Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." MODEL PENAL CODE § 210.0(3). The New Jersey statute defines "significant bodily injury" as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." N.J. STAT. ANN. § 2C:11-1d. Under New Jersey law there is a legal difference between significant and serious bodily injury. New Jersey law defines serious bodily injury and assault with intent to cause serious bodily injury is a crime of the second degree – a greater offense than that of which the defendant was convicted. N.J. STAT. ANN. § 2C11-1b. defines "serious bodily injury" as "bodily injury to create substantial risk of death or which causes serious permanent disfigurement or a protracted loss or impairment of any function of the body member or organ" – a definition very similar to that in the MODEL PENAL CODE.[4]

"Even if the fit between the enumerated offense of aggravated assault and

---

[4] Other sources for a common sense definition of aggravated assault are not helpful. Professor LaFave's definition of aggravated assault notes that "[i]n all jurisdictions statutes punish, more severely than simple assault, such aggravated assaults as 'assault with intent to murder' (or to kill or rob or rape) and 'assault with a dangerous [or deadly] weapon.'" 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.3(d) (2d ed. 2007). Black's Law Dictionary defines aggravated assault as a "[c]riminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp. by using a deadly weapon." BLACK'S LAW DICTIONARY 122 (8th ed. 2004). Professor LaFave's definition does not reference a bodily injury, while the definition in Black's Law Dictionary more closely parallels the Model Penal Code's definition of aggravated assault.

the ordinary, contemporary, and common meaning of aggravated assault may not be precise in each and every way, slight imprecision would not preclude [this court from] finding a sufficient equivalence." United States v. Rojas-Gutierrez, 510 F.3d 545, 549 (5th Cir. 2007). Rojas-Gutierrez involved a situation which required comparison of a California statute that criminalized assault with intent to commit certain listed felonies with LaFave's and Black's definition of aggravated assault which had a slightly different list of offenses or referred generally to another crime. On plain error review, the difference in this case between significant bodily injury and serious bodily injury under New Jersey law is not enough to take the defendant's crime out of the common sense definition of the enumerated offense of aggravated assault.

## IV.

For the reasons set forth above, we affirm Ramirez's sentence because he fails to establish plain error in the determination of his guidelines sentence. AFFIRMED.