In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-3591

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

NIKITA HAMPTON,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 983-1—**Harry D. Leinenweber**, *Judge*.

_____

ARGUED MAY 30, 2006—DECIDED SEPTEMBER 20, 2006

_____

Before POSNER, KANNE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.  A jury convicted the defendant of ten robberies of federally insured banks plus one attempted robbery (which we needn't discuss separately) of such a bank, and of related crimes involving firearms. The judge sentenced him to a total of 444 months in prison. The only issue on appeal is whether the banks were in fact federally insured. Photocopies that purport to be the certificates of insurance that the Federal Deposit Insurance Corporation had issued to the banks (but no originals) were introduced into evidence, and an employee of each bank, typically a teller, testified that an identical photo-

copy hanging on the wall of his bank was a true copy of the bank's certificate. Several of the banks are branches of huge banks like Bank One and Citibank, but others bear more obscure names, such as Chicago Community Bank or North Community Bank.

The government's practice in cases in which federally insured status is an element of the crime is to ask the defendant's lawyer to stipulate that the institution in question was federally insured at the time of the offense. But if the defendant's lawyer was asked for such a stipulation in this case, which we haven't been told, he refused, thus putting the government to its proof.

All the copies placed in evidence bear dates of issuance of the copied certificate before the robberies. So far, so good. But even if the copies are accurate copies of valid certificates of insurance issued by the FDIC, the insurance may have expired or been cancelled or may have been issued to predecessors of these banks and somehow lapsed when the banks were acquired by their present owners. The bank employees who testified about their banks' insured status testified that the banks were currently insured, and the jury was entitled to believe their testimony. *United States v. Higgans*, 507 F.2d 808, 813 (7th Cir. 1974); *United States v. De Tienne*, 468 F.2d 151, 158-59 (7th Cir. 1972); *United States v. Williams*, 592 F.2d 1277, 1281-82 (5th Cir. 1979). It would have been better had they been asked not whether the banks were currently insured (that is, at the time of trial), but whether they had been insured on the date of the robberies, five months earlier. But the likelihood that insurance had lapsed and been reinstated was too slight to undermine the testimony seriously. See *United States v. Guerrero*, 169 F.3d 933, 944-45 (5th Cir. 1999).

The defendant's only possibly meritorious argument is that the copies that were placed in evidence are inadmissible under the Federal Rules of Evidence. It is not so clear that without the copies the jurors would have believed the tellers that we can conclude that the admission of the copies, if it was an error, was a harmless one. Usually when the government relies on testimony to establish a bank's insured status, it is testimony by a bank officer, as in the three cases we cited, rather than by a lowly teller. See also *United States v. Phillips*, 606 F.2d 884, 887 (9th Cir. 1979) (emphasis added) ("the rule, as stated in this circuit and elsewhere, is that uncontradicted testimony of a *ranking official* of the institution is sufficient to establish that the institution is federally insured"); *United States v. Ross*, 77 F.3d 1525, 1547-48 (7th Cir. 1996); *United States v. Harris*, 914 F.2d 927, 933-34 (7th Cir. 1990); *United States v. Taylor*, 728 F.2d 930, 933 (7th Cir. 1984); *United States v. Knop*, 701 F.2d 670, 672-73 (7th Cir. 1983); *United States v. McIntosh*, 463 F.2d 250 (3d Cir. 1972). This is not to say that testimony by a teller is insufficient as a matter of law to establish insured status, *United States v. Ware*, 416 F.3d 1118, 1121, 1123 (9th Cir. 2005); *United States v. Bindley*, 157 F.3d 1235, 1238-39 (10th Cir. 1998), but only that it is not so compelling that an error in admitting other evidence of insured status must be harmless. The argument in the government's brief that even a teller who had been employed for only a few hours would know his bank's insured status might fall quite flat with a jury.

The district judge admitted the photocopies under Rule 902(1) of the Federal Rules of Evidence, which provides that documents bearing a seal of the United States or one of its officials, agencies, etc., plus a signature purporting to attest or execute the document, is "self-authenticating." This means that the document is admissible in evidence without

any need for a witness to testify that it is authentic, that is, that it is what it purports to be (an official document stating what it states). *United States v. Mateo-Mendez*, 215 F.3d 1039, 1041, 1043-44 (9th Cir. 2000); *United States v. Moore*, 555 F.2d 658, 661 (8th Cir. 1977). But seals are used to attest the authenticity of the document on which the seal is stamped, and no seal was stamped on the copies. The copies were copies of sealed documents rather than sealed documents themselves. The rationale of Rule 902(1), according to the Committee Notes, is that a seal is difficult to forge. See also *United States v. Wexler*, 657 F. Supp. 966, 971 (E.D. Pa. 1987). But that is not true of a copy of a seal—or at least the government has made no effort to show that the authenticity of the seal can be inferred with confidence from its copy. See 5 Stephen A. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual* 902-7 (8th ed. 2002). So the government's argument fails. See *Mathis v. State*, 930 S.W.2d 203, 205 (Tex. App. 1996); 31 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 7135 (2000).

Another federal rule of evidence, however, Rule 1005, provides that copies of public records are admissible if either a witness testifies that he compared the copy with the original and determined the copy to be accurate, or, in accordance with Rule 902(4), either the custodian of the original record, or someone else authorized to certify the accuracy of copies of it, certifies that it is an accurate copy. *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 845 n. 19 (3d Cir. 1981); *United States v. Rodriguez*, 524 F.2d 485, 487, 488 n. 6 (5th Cir. 1975); 31 Wright & Gold, *supra*, §§ 8032, 8034. Some though not all of the bank employees testified that the photocopy the prosecutor showed them during their direct examination at trial was a copy of the certificate hanging on the wall of the bank, but there is no indication that that certificate was not itself a copy. One of these witnesses testified that the certificate was posted throughout his bank.

Were those all originals? Does the FDIC issue multiple certificates for each branch office of an insured bank? There is no evidence bearing on the issue, and the government does not ask us to take judicial notice of the Corporation's practice.

Nevertheless we think the copies were admissible to establish the insured status of the banks as of the dates shown on the copies. The parties have managed to overlook provisions of the Federal Rules of Evidence which show that Rules 902(1), (4), and 1005 are not intended as straitjackets. Article IX of the rules deals with authentication and there we read that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a). And in Article X, which deals with the admissibility of the contents of documents, we read that "a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. And a photocopy (or equivalent chemical or electronic copy) is a "duplicate" within the meaning of the rule. Fed. R. Evid. 1001(4); *United States v. Gerhart*, 538 F.2d 807, 810 n. 4 (8th Cir. 1976); 31 Wright & Gold, *supra*, § 7135. These rules make clear that the principle enunciated in an 1807 case cited to us by the defendant that "authentication must not rest upon probability," *United States v. Burr*, 25 Fed. Cases 27, 28 (Cir. Ct. D. Va. 1807), is no longer the law, even if it was said by Chief Justice Marshall in the treason trial of Aaron Burr.

The bank employees may conceivably have been mistaken about the insured status of their banks. But they all testified that they recognized the copies shown them by the prosecu-

tor as copies of the certificates possessed by or posted in their banks, which is pretty compelling evidence that the copies were not forgeries prepared by or for, or somehow obtained by, the government. As between the parties' rival hypotheses—that the copies are genuine, as the government contends, and that they are forgeries, as the defendant contends—the defendant's hypothesis is so improbable that without some evidence to support the hypothesis no reasonable person would accept it. *Abbott Laboratories v. TorPharm, Inc.*, 309 F. Supp. 2d 1043, 1052 (N.D. Ill. 2004) (and references cited there). No such evidence was offered.

So we think the copies were admissible, and this kills the appeal. But the government would be wise in future cases to prove insured status more directly and conclusively than was done in this case, either by getting an affidavit from the FDIC confirming the insured status of the robbed bank, as in *United States v. Darrell*, 828 F.2d 644, 648-49 (10th Cir. 1987), or by offering testimony by the bank employee who is the actual authorized custodian of the bank's FDIC certificate, as in *United States v. Cooper*, 375 F.3d 1041, 1047-48 (10th Cir. 2004). The government was sloppy in this case, as in many others in which federally insured status is an element of the crime, e.g., *United States v. Bindley*, *supra*, 157 F.3d at 1238-39; *United States v. Brunson*, 907 F.2d 117, 119-20 (10th Cir. 1990); *United States v. Slovacek*, 867 F.2d 842, 846 (5th Cir. 1989), probably because the matter is usually stipulated. But sloppiness is not a ground for reversal of a judgment.

AFFIRMED.

A true Copy:

    Teste:

                           _____
                           *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*