In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3992

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CIRILO AVILES-SOLARZANO,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 9—**Amy J. St. Eve**, *Judge*.

ARGUED SEPTEMBER 20, 2010—DECIDED OCTOBER 13, 2010

Before EASTERBROOK, *Chief Judge*, and POSNER and
ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty
to having reentered the United States after having been
removed (deported) as an illegal alien, in violation of
8 U.S.C. § 1326(a). The judge sentenced him to 70
months in prison. This was below the federal sentencing
guidelines range of 77 to 96 months that she thought
applicable, but considerably above the guidelines range

of 33 to 41 months that would have been applicable had she not determined that the defendant's conviction for aggravated battery under Illinois law at a time when he was in the United States illegally was a conviction for a "crime of violence" within the meaning of section 2L1.2(b)(1)(A)(ii) of the guidelines. That section defines the term, so far as bears on this case, as a crime "that has as an element the use, attempted use, or threatened use of physical force," which the Supreme Court has interpreted to mean "force capable of causing physical pain or injury to another person." *Johnson v. United States,* 130 S. Ct. 1265, 1271 (2010). The crime must, moreover, be a felony to count as a crime of violence. U.S.S.G. § 2L1.2, Application Note 1(B)(iii).

Under Illinois law "a person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). This is "simple battery," a misdemeanor. *Id.*, 5/12-3(b). A person commits "aggravated battery," a felony, either if, "in committing a [simple] battery, [he] intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement," *id.*, 5/12-4(a), or if the battery involves one or more aggravating factors other than intentionally or knowingly causing great bodily harm or permanent disability or disfigurement. *Id.*, 5/12-4(b). The present case is of the second type, and the aggravating factor is committing the battery on a "public way." *Id.*, 5/12-4(b)(8). It may seem odd that committing a battery on a street or a sidewalk rather than on private property

should make it a felony; but a battery that occurs in private is less worrisome to the public at large because more likely to arise from a private quarrel than from a mugging—or so at least the Illinois legislature seems to have believed. See *People v. Cole*, 362 N.E.2d 432, 435 (Ill. App. 1977).

The district judge ruled that the defendant had committed a battery on a public way, and therefore a crime of violence within the meaning of the sentencing guideline, and it was on this basis that she concluded that the 77 to 96 month guidelines range was the proper starting point for deciding how long a sentence to impose. The defendant challenges that ruling. He also complains that the judge should have dipped even farther below the applicable guideline range in sentencing him than she did, but that complaint is frivolous and requires no discussion.

He begins by noting correctly that not every crime that Illinois classifies as an aggravated battery is a crime of violence within the meaning of the sentencing guideline. Violence is not an element of battery under Illinois law, or even of aggravated battery under 720 ILCS 5/12-4(b), as distinct from under 4(a). Remember that under 4(b) aggravated battery is simple battery plus an aggravating factor, and neither simple battery nor the 4(b) aggravating factor need be violent. Simple battery can consist of just "physical contact of an insulting or provoking nature" with the victim, and the aggravating factor can just be the fact that, as in this case, the simple battery occurred on a public way. But this means that had the defendant

merely spat on his victim while the two were standing on a public sidewalk, this would be an aggravated battery but not a crime of violence, as it would involve a merely "insulting or provoking" physical contact. The terms "insulting" and "provoking" are taken from the common law tort of battery, which requires only an offensive contact—the sort of thing that might provoke a breach of the peace. Spitting on a person is the standard example of a provoking act, e.g., *Alcorn v. Mitchell*, 63 Ill. 553 (1872); *Cohen v. Smith*, 648 N.E.2d 329, 331-33 (Ill. App. 1995), as distinct from a violent one. Cf. *United States v. Evans*, 576 F.3d 766, 767-68 (7th Cir. 2009) (per curiam). By its reference to conduct that "causes bodily harm," the statute embraces violent batteries as well, *id*. at 768-69; *Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1270-71 (Ill. App. 2006), but just being told that a person was convicted of aggravated battery because he committed a battery on a public way does not enable an inference that he was convicted of a crime of violence.

When the same state criminal statute punishes conduct that is and conduct that is not a crime of violence for purposes of federal sentencing, the federal court is not permitted to determine which kind of conduct the defendant engaged in if the determination would require resolving a factual dispute. For that would require a trial within the sentencing hearing and if the result was to increase the maximum punishment of the defendant would infringe his constitutional right to trial by jury. *Taylor v. United States*, 495 U.S. 575, 600-02 (1990); *United States v. Shannon*, 110 F.3d 382, 384-85 (7th Cir. 1997) (en banc); *United States v. Browning*, 436 F.3d 780, 780-82 (7th

Cir. 2006). "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Taylor v. United States*, *supra*, 495 U.S. at 600.

The Supreme Court thus held in *Shepard v. United States*, 544 U.S. 13, 26 (2005), that in seeking to classify a prior state conviction for federal sentencing purposes the sentencing judge "is limited to the terms of the charging document, the terms of a plea agreement or transcript or colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." See also *United States v. Ramirez*, 606 F.3d 396, 398 (7th Cir. 2010); *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010). There is no objection to using judicial admissions, such as admissions in a guilty-plea hearing (including the guilty plea itself), to determine whether the crime of which the defendant was convicted is within a category specified by federal law because judicial admissions bind the defendant in subsequent proceedings and so avoid any occasion for the federal sentencing judge to determine contested facts regarding an earlier crime.

The judge in this case did not base her determination that the defendant's aggravated battery was a crime of violence on a judicial record, however—not directly at any rate. She based it on a summary in the presentence investigation report of the two-count indictment in the battery case, and on the further statement in the report that the defendant had pleaded guilty to both counts. A

presentence investigation report is prepared by the federal probation service. Fed. R. Crim. P. 32(c), (d). It is not a judicial record.

One count in the indictment, according to the summary, was not a battery count at all; it charged the defendant with having committed theft by reaching into his victim's pocket and removing $10 from it. There is no contention that this count charged a crime of violence. The other count, however, charged the defendant with having committed aggravated battery by having "knowingly caused bodily harm" to the victim (the same person named in the theft count) by "stri[king him] in the face with his fist" on a public sidewalk.

Here is the summary in full:

> According to the indictment filed, the defendant on or about August 18, 2006, committed the offense of theft, in that he knowingly obtained unauthorized control over the property of James R. Raymond, being $10.00 in United States currency, intending to deprive James R. Raymond permanently of the use or benefit of such property, in that he forcefully removed such property from the person of James R. Raymond, by reaching into the pocket of James R. Raymond. The indictment further charges that, on [or about August 18, 2006], the defendant committed the offense of aggravated battery in that, while James R. Raymond was on a public sidewalk, located in Villa Park, Illinois, the defendant knowingly caused bodily harm to James R. Raymond, in that he struck James R. Raymond in the face with his fist.

The defendant as we said pleaded guilty to both theft and aggravated battery, and since punching someone in the face is a crime of violence within the meaning of the relevant sentencing guideline because it involves the use of physical force "capable of causing physical pain or injury to another person," *Johnson v. United States*, *supra*, 130 S. Ct. at 1271; *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973 (7th Cir. 2010), the defendant may seem nailed. But there's a rub. The indictment was never placed in the record, either in the district court or in this court. All we have is the summary. In *Rodriguez-Gomez* we held that a quotation from the indictment in a government submission to the probation service that was attached to the presentence investigation report could be treated as if it were the indictment itself. 608 F.3d at 974. But an additional factor in that case was that "at oral argument, appointed counsel acknowledged receipt of the [indictment] in the aggravated battery conviction. He did not argue that it was error to conclude that [the defendant] had been convicted under the first prong of the battery statute," *id.*, that is, 720 ILCS 5/12-4(a), which, remember, requires the "use, attempted use, or threatened use of physical force."

We do not have an admission in this case, but only the summary. If it can be taken as a complete and accurate summary, then in pleading guilty to aggravated battery the defendant was admitting that he had punched his victim in the face, and the admission would be binding and thus establish that he had been convicted of a form of battery that constitutes a crime of violence under the federal sentencing guidelines. But

it may not be complete and accurate. No one has vouched for its accuracy. An indictment is a public document, and we can't think of any reason—and have been given no reason—why the government could not have obtained a certified copy and submitted it at the sentencing hearing. An unsubstantiated summary of an indictment in a presentence investigation report does not satisfy the Supreme Court's requirement of a judicial record and thus is not (unless its accuracy is unquestioned—an important qualification to which we'll return) a proper basis for classifying a defendant's prior crimes for purposes of federal sentencing.

And so most courts have held. *United States v. Wynn*, 579 F.3d 567, 575-77 (6th Cir. 2009); *United States v. Hays*, 526 F.3d 674, 678 (10th Cir. 2008); *United States v. Rosa*, 507 F.3d 142, 156 (2d Cir. 2007); *United States v. Martinez-Vega*, 471 F.3d 559, 561-62 (5th Cir. 2006); *United States v. Turbides-Leonardo*, 468 F.3d 34, 39 (1st Cir. 2006); *United States v. Webster*, 442 F.3d 1065, 1068-69 (8th Cir. 2006); *United States v. Contreras-Salas*, 387 F.3d 1095, 1098 (9th Cir. 2004). We have found only two outliers. *United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005), states that "the trial judge was entitled to rely upon the PSR because it bears the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from his prior convictions, and, moreover, [the defendant] never raised the slightest objection either to the propriety of its source material or to its accuracy." The alternative holding, in the second sentence, is fine; but the phrase "earmarks of derivation" makes us uncomfortable. Similarly, the statement in *Ryle*

*v. State*, 842 N.E.2d 320, 323-25 (Ind. 2005), that because probation officers are highly trained, a summary of a judicial record appearing in a state presentence investigation report may be relied on in sentencing, troubles us because it would open the door to a promiscuous use of summaries composed by "highly trained" persons in lieu of original documents. That's a particularly disturbing prospect when we reflect that in this case the classification of the defendant's battery as a crime of violence may well have doubled his sentence.

In *Rodriguez-Gomez* at least, the material part of the indictment was quoted, and, critically, the defendant's lawyer admitted the quotation was accurate; he had seen the indictment and could attest to the accuracy of the quotation. There is nothing like that here. But there's something else. The defendant's lawyer didn't question the accuracy of the summary in the presentence investigation report, even though she had access to the indictment; it is a public document, as we said. She could have gotten hold of a certified copy of the indictment and compared it with the summary in the presentence investigation report, just as the defendant's lawyer in *Rodriguez-Gomez* had done. Her failure to do so suggests fear of what she would find; and in any event, not having objected in the district court to the summary, she can prevail on appeal only by showing that the district judge committed a plain error (an error at once evident and prejudicial) in basing the sentence on the summary. *United States v. Ramirez*, *supra*, 606 F.3d at 398-99.

And just as in *Ramirez*, she has not carried that burden. See also *United States v. Martinez-Vega*, *supra*, 471 F.3d at 563. In fact, we don't think she's shown any error by the district court. Nothing is more common than for parties by stipulation formal or informal to agree to facts that, were it not for the stipulation, would have to be proved by evidence, in this case a judicial record. See *United States v. Mezzanatto*, 513 U.S. 196, 203 (1995). Such stipulations are routine, for example in crimes against federally insured banks, where the parties normally stipulate that the bank is federally insured rather than requiring that this be proved by submitting the bank's FDIC certificate of deposit insurance to the court. E.g., *United States v. Hampton*, 464 F.3d 687, 688 (7th Cir. 2006); *Bailey v. Mitchell*, 271 F.3d 652, 657 (6th Cir. 2001); *United States v. Branch*, 46 F.3d 440, 441-42 (5th Cir. 1995). A defendant's criminal record is also commonly stipulated. E.g., *United States v. Stokes*, 211 F.3d 1039, 1042-43 (7th Cir. 2000); *United States v. Le*, 512 F.3d 128, 133 (5th Cir. 2007); *United States v. Johnson*, 505 F.3d 120, 122 (2d Cir. 2007).

There is no reason to go digging for a state-court indictment if the parties agree on what it says. The judge was entitled to assume that the parties agreed that the summary of the indictment was accurate. "At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A); see also *United States v. Kelly*, 519 F.3d 355, 366 (7th Cir. 2008); *United States v. Thornton*, 463 F.3d 693, 700-01 (7th Cir. 2006); *United States v. Lopez-Garcia*, 565 F.3d 1306, 1323 (11th Cir. 2009); *United States v. Jimenez*,

512 F.3d 1, 7 (1st Cir. 2007). She didn't have to insist that they produce the indictment. "[I]f a defendant offers an admission in court papers or colloquy, as [the defendant] does here in his plea agreement and during sentencing, the proper enquiry into the previous conviction no longer matters because the answer is in the form of an admission in the record." *United States v. Kindle*, 453 F.3d 438, 442 (7th Cir. 2006); see also *United States v. Billups*, 536 F.3d 574, 583-84 (7th Cir. 2008). The judge could reasonably assume that the defendant's lawyer was satisfied that the summary was accurate. *United States v. Kelly*, *supra*, 519 F.3d at 366; *United States v. Turbides-Leonardo*, *supra*, 468 F.3d at 39.

The lawyer's failure (if she did fail—for all we know, she read the indictment and concluded that the summary was accurate) to obtain a copy of the indictment may conceivably have been a breach of her professional obligations to her client. *United States v. Davenport*, 986 F.2d 1047, 1048, 1049-50 (7th Cir. 1993); cf. *United States v. Tucker*, 603 F.3d 260, 266-67 (4th Cir. 2010). If so, and if the summary is inaccurate and the inaccuracy material, the defendant may have a claim of ineffective assistance of counsel that he can raise in a postconviction proceeding. But the sentencing judge committed no error, plain or otherwise.

AFFIRMED.