In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 15-2005

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK SMITH,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 175 — **Sharon Johnson Coleman**, *Judge.*

---

ARGUED FEBRUARY 26, 2016 — DECIDED MARCH 11, 2016

---

Before POSNER, FLAUM, and EASTERBROOK, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In March 2011 Derrick Smith was appointed to the Illinois House of Representatives to complete an unfinished term. He wanted to be elected in his own right, which meant that he had to campaign in his party's primary, set for March 2012. One of his campaign assistants, known to Smith as "Pete," alerted the FBI that Smith might be corrupt. Pete (whose last name has been kept confidential) began recording some of his conversations with

Smith. At the FBI's suggestion, Pete told Smith that a woman who lived in his district would provide $7,000 (money that would help Smith pay his campaign staff) if Smith wrote a letter supporting her application for a grant from the state's Capital Development Board for the construction of a daycare center. This was a sting; there was no such woman, and the money would come from the FBI.

Letters of recommendation from one public official to another are common and lawful—unless paid for. The exchange of an official act for money violates federal law, no matter how the recipient uses the cash. See, e.g., *Evans v. United States*, 504 U.S. 255 (1992); *McCormick v. United States*, 500 U.S. 257 (1991); *United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015). Smith wrote the letter, and Pete handed over $7,000. Smith immediately used some of the money to pay his campaign staff; a search of his home turned up the rest.

At Smith's trial for violating 18 U.S.C. §§ 666(a)(1)(B) and 1951, the prosecutor introduced the recorded conversations with Pete. The jury convicted, and the judge sentenced Smith to five months' imprisonment and one year's supervised release. Neither side called Pete as a witness: he was a shady character and may have been stealing from the FBI in addition to assisting it. Pete said that he would not testify, asserting his constitutional privilege not to be compelled to incriminate himself. Since the prosecutor did not want Pete's testimony, he did not ask the court to grant use immunity; defense counsel did not call Pete to see whether the district judge would honor his assertion of the privilege. (It is easy to imagine lines of questioning whose answers could not incriminate Pete.)

The sole argument Smith makes on appeal is that, with Pete not in court, the use of his recorded statements violated the Confrontation Clause of the Sixth Amendment. It is unclear why Smith casts this as a constitutional argument rather than as one based on the hearsay doctrine. See *United States v. Walker*, 673 F.3d 649, 659–61 (7th Cir. 2012) (concurring opinion). The hearsay rule excludes out-of-court statements offered for their truth. See Fed. R. Evid. 801(c). (There are exceptions, but the United States does not argue that any applies.)

The Confrontation Clause, by contrast, affects only "testimonial" statements. See, e.g., *Ohio v. Clark*, 135 S. Ct. 2173 (2015); *Crawford v. Washington*, 541 U.S. 36 (2004). Indeed it covers only a subset of testimonial hearsay. Statements that would have been admissible at common law in 1793 (in other words, statements that are not hearsay or are covered by longstanding exceptions to the hearsay doctrine) are outside the Sixth Amendment, see *Giles v. California*, 554 U.S. 353, 358–59 (2008), as are all statements by witnesses who are available for cross-examination, see *Crawford*, 541 U.S. at 60 n.9. And *Clark* shows that the Court has not yet decided whether the Confrontation Clause covers testimonial statements by one private party to another. Thus if a statement is not hearsay, because not offered for its truth, it also is not "testimonial" for the purpose of the Confrontation Clause.

The district judge admitted Pete's recorded statements after concluding that they helped to put Smith's recorded statements in context. Smith maintains that Pete's statements do more than put his own in context—and that even if just used for context they are inadmissible because Pete said much more on the recordings than Smith did. It is easy to

find statements in judicial opinions discussing whether statements have been used for "context" and commenting on the relative length of different speakers' statements, but those observations must not be understood to displace the legal standards—for hearsay whether the out-of-court statement is offered for truth, and for the Confrontation Clause whether the out-of-court statement is testimonial.

To see this, consider a simple hypothetical. "Pete: I will pay you $7,000 in exchange for a letter my client can use to seek a grant for a daycare center. Do you agree? Smith: Yes." In this example, Pete utters 25 words to Smith's one—but there is no hearsay because Pete's statement is not used to show that anyone will pay $7,000. It is used instead to show the meaning of Smith's "yes," which does not depend on whether Pete was speaking truthfully. The "yes" constitutes Smith's agreement to exchange money for an official act. Pete's statements may put Smith's "in context," but that's unimportant. What matters is that, without being used for their truth, they enable the jury to determine the import of Smith's own words. Allowing the jury to hear Pete's words no more violates the Confrontation Clause than does providing a jury with a dictionary or a translation from a foreign language or an expert on criminal jargon. Talking about "context" does not help to establish whether such an exchange is properly admitted, nor does counting the number of words tell us whether Pete's statement is hearsay under Rule 801 or "testimonial" for constitutional purposes.

Now consider a different example. "Pete: Last week I paid you $7,000 for a letter that my client will use to seek a grant for a daycare center. Do you remember? Smith: Yes." This has the same 25-to-1 ratio of words, and it too could be

said to show the context of Smith's reply. But this statement would be hearsay, because it would be relevant only if Pete spoke the truth—that he had paid $7,000 in exchange for a letter. Once again it would be best to tackle the dispositive questions directly rather than be sidetracked into word counts or a search for "context." Even the briefest testimonial out-of-court statement—e.g., "Smith shot Jones"—can violate Rule 801 and the Confrontation Clause, no matter its effect on the context in which to place hearers' responses.

We looked through the record to determine whether Pete's statements (and those of other persons heard on the recordings) were offered for their truth. Here is one exchange that Smith has selected as an example:

[Pete]: The broad is fixin' to give.

Smith: I got you, mother fucker. I told your ass, I got you.

[Pete]: For real, look. The broad is gonna give seven thousand, with no problem.

Smith: Okay.

Pete's statements in this exchange are admissible. They were not offered for their truth—that is, to show that someone *was* going to pay Smith. The "broad" did not exist, and the FBI did not plan to let Smith keep the money. Instead Pete's statements were used to show what Smith himself understood the transaction to entail.

Here's another exchange to which Smith objected:

[Pete]: You ready, you ready to write?

Smith: Yeah I got it.

Once again Pete's statement was not offered for the truth of anything, though it does tend to show the meaning of Smith's "I got it." No hearsay here.

It would not be helpful to run through all of the other exchanges. They are similar to these. Smith has not been convicted on the basis of hearsay, or of out-of-court testimonial statements. Smith's own words and deeds convicted him.

Affirmed