In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1188

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL MONTEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-00755-8 — **Ronald A. Guzman**, *Judge.*

ARGUED MARCH 30, 2017 — DECIDED JUNE 5, 2017

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Daniel Montez appeals his conviction and sentence for possession with intent to distribute cocaine. He principally argues that the district court erred in admitting a wiretapped conversation he had with an alleged supplier. He also asserts that the district court improperly applied the Sentencing Guidelines' career offender enhancement. Finding his arguments unpersuasive, we affirm the judgment of the district court.

## I. Background

This case arose from an investigation of a drug trafficking ring led by Jose de Jesus Ramirez-Padilla (known as "Gallo"). Beginning in 2011, federal agents placed court-authorized wiretaps on the phones of Gallo and others connected with his organization. These wiretaps intercepted a call between Montez and Gallo, and another one between Montez and Gallo's brother, Helein Ramirez-Padilla ("Helein").

Based upon the evidence obtained through the wiretaps, the government initially charged 40 individuals, including Gallo, Helein, and Montez, with narcotics conspiracy in violation of 21 U.S.C. § 846. The grand jury eventually returned indictments charging 23 individuals with narcotics-trafficking crimes. While Gallo, Helein, and four others were eventually indicted on conspiracy charges, Montez was indicted on three counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The three counts related to three distinct alleged transactions: on October 27, 2011; December 12, 2011; and June 17, 2012.

Before trial, Montez raised concerns that the recordings of the wiretapped calls (or at least the words of Gallo and Helein in those recordings) were inadmissible hearsay. Montez pressed only general objections to calls from October 27, December 12, and December 14, 2011. The district court rejected what it termed Montez's "blanket objection to every statement in the recordings," and then went on to provide some specific examples of statements that were not hearsay. The court held that Helein's words were necessary as context for Montez's admissions and allowed the recordings to be played to the jury.

At trial, in addition to the phone calls, the government elicited Gallo's live testimony that Montez had been a customer of his organization. Two FBI agents also testified to the effect that Montez had admitted to purchasing cocaine at the time of his arrest. Montez's strategy was to cast himself as a user of the drugs, rather than a distributor. To that end, he called one additional agent who testified that he didn't find any typical drug-dealing paraphernalia in Montez's home at the time of the arrest. In the end, Montez was convicted of the December count, but acquitted of both the October and June counts.

At sentencing, the district court found that Montez was a career offender under Section 4B1.1 of the Sentencing Guidelines based on his 1985 Illinois murder conviction and 2007 Illinois conviction for aggravated battery of an officer. After the enhancement, Montez's offense level was 32 and his criminal history category was VI, accounting for a Guidelines range of 210 to 262 months, capped by a 20-year statutory maximum. The district court sentenced Montez to 210 months' imprisonment. Montez appealed his conviction and the application of the career-offender enhancement.

## II. Discussion

Montez raises four issues with the proceedings below. He says: (1) the district court should have excluded at least portions of his December phone calls with Helein because Helein's statements were inadmissible hearsay; (2) the district court erred in its treatment of a witness's answer that he worked on the "gang task force" after the parties had agreed to omit any mention of gang activity in the trial; (3) his conviction was tainted by incorrect transcripts of wiretapped calls introduced before the grand jury; and (4) his conviction

for aggravated battery was insufficient to justify the application of the Guidelines' career-offender enhancement. We consider and reject each argument in turn.

### A. Hearsay Objections

Montez's most significant complaint about the district court's judgment is the court's decision to admit conversations between himself and Helein from December 12 and December 14, 2011.[1] Montez made only a blanket hearsay objection to the entire conversation, refusing the district court's invitation to identify particular statements by Helein that constituted inadmissible hearsay. He has now identified particular portions of the transcripts that he says contain hearsay statements by Helein.

Normally, we would review the district court's evidentiary rulings for abuse of discretion. *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016). The government argues that we should apply the plain error standard of review because of Montez's failure to make objections to particular statements. See *United States v. Walker*, 237 F.3d 845, 851 (7th Cir. 2001). Abuse of discretion is a "highly deferential" standard of review, but plain error is "even more highly deferential." *United States v. Cheek*, 740 F.3d 440, 451 (7th Cir. 2014). However, we do not need to decide this question because even under the abuse of discretion standard, we would uphold the district court's evidentiary ruling.

The three particular exchanges that Montez highlights in his brief are as follows:

---

[1] Montez also objected to admission of the October conversation, but that's not relevant on appeal since he was acquitted on the October count.

December 12:

Montez: And listen, is it hard or is it loose?

Helein: It's real nice, dude.

Montez: Okay. That's what I need to know.

Helein: It's more or less.

Montez: Okay, no, no, so I know because these fucking dudes are picky.

December 12:

Montez: I'm passing uh, almost by 47th.

Helein: Look, dude, take about fucking 20 minutes around there, dude. Are you going to want the three?

Montez: I'm going to grab one first, uh, I'm ... because the other dude is not going to give me the tickets yet; but I will need three, yes.

Helein: All right.

Montez: So, so what do you want?

Helein: For you to arrive in about 20 minutes so I can measure all of the shit.

December 14:

Montez: But, is it going to be uh, firmer ... not like

Helein: No, it's nice, it's nicer dude.

Montez: Good, because this other one you gave me, man, wasn't worth shit man. It was good, but it was all loose, man. I had problems even giving it to that son of a bitch.

The district court, in overruling Montez's general objections, found that Helein's statements were not hearsay because they were necessary to provide context for Montez's admissions. However, as we explained last year, when an argument is made that out-of-court statements should be admitted as context, the relevant legal question is still whether those statements are offered for their truth. *United States v. Smith*, 816 F.3d 479, 481 (7th Cir. 2016). In other words, the fact that the declarant's words help place the defendant's admissions into context is not an independent basis upon which to say the declarant's statements are not hearsay.

In *Smith*, we explained the difference between a statement offered for its truth and one offered to make sense of another party's admission. Suppose the declarant (Helein in this case) says to the defendant, "I will pay you $7,000 in exchange for a letter my client can use to seek a grant for a daycare center. Do you agree?" To this, the defendant simply responds "yes." Under the reasoning in *Smith*, the declarant's words are admissible because they are not offered for their truth, but rather "to show the meaning of [the defendant's] 'yes,' which does not depend on whether [the declarant] was speaking truthfully." *Id.* On the other hand, suppose the declarant had said, "[l]ast week I paid you $7,000 for a letter that my client will use to seek a grant for a daycare center. Do you remember?" If the defendant responded "yes," the declarant's statement would be hearsay "because it would be relevant only if [the declarant] spoke the truth – that he had paid $7,000 in exchange for a letter." *Id.* at 482.

Similarly, in *United States v. Amaya*, 828 F.3d 518, 528 (7th Cir. 2016), an officer testified that an out-of-court declarant

had said "[t]hat was a big-ass pistol" and the officer had responded "[h]ell yea." We reasoned that the declarant's statement was hearsay because his exclamation regarding the pistol only puts the officer's response "in context and is only relevant if the [declarant] was speaking the truth." *Id.* These cases teach that the ultimate question is whether the declarant's statement is relevant only if it is true. If a statement is relevant irrespective of its veracity, then it is not hearsay.

In our case, the truth or falsity of Helein's statements is irrelevant. For example, in the first exchange above, Helein's statements "[i]t's real nice, dude" and "[m]ore or less" weren't offered to prove that the cocaine the two men were discussing was in fact of high quality. Rather, they were offered to explain the meaning of Montez's answers. Without Helein's statements, Montez's "[o]kay" would be unintelligible, as we would have no idea to what he was responding. Like the first statement discussed in *Smith*, Helein's words are admissible because they were offered irrespective of their truth to explain Montez's response. Montez's words, particularly his admission that "these fucking dudes are picky," do all the work to incriminate him as a distributor of cocaine.

Likewise in the second exchange, Helein's statements were not offered for their truth (such as that he would take 20 minutes to measure the cocaine or that he had cocaine at all), but to illustrate the significance of Montez's agreement to show up. And in the third exchange, the truth of Helein's utterance (that the cocaine was better than the batch he had provided two days earlier) was similarly irrelevant. Helein's words were instead offered to explain Montez's complaint about the quality of the December 12 cocaine. Once again, Montez's problem is not Helein's words, but that his own

statements on December 14 show that he did indeed pick up cocaine from Helein on December 12.

We conclude that Helein's statements in the wiretapped calls were not offered for the truth of the matters asserted therein. Therefore, the district court did not err, much less abuse its discretion, by admitting the entirety of the conversations.

## B. The "Gang Task Force" Comment

Montez next argues that the district court erred by failing to do anything when a federal agent witness, by way of introductory questioning, testified that he worked in the gang task force. Because the parties had agreed not to mention anything gang-related during the trial, Montez's counsel asked for a sidebar after the comment. While Montez now says the judge should have issued a limiting instruction or struck the comment from the record, at the time his counsel told the judge there was nothing the judge could do about it. As a result, he has waived any objection to the judge's handling of the comment.

"Waiver occurs when a criminal defendant intentionally relinquishes a known right." *United States v. Haddad*, 462 F.3d 783, 793 (7th Cir. 2006). "Waiver of a right extinguishes any error and precludes appellate review." *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007). "We have found waiver where either a defendant or his attorney expressly declined to press a right or to make an objection." *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). That is precisely what happened here. The court asked Montez's counsel what it should do about the stray reference, but counsel rejected the judge's invitation to do something. Given the situation, this was

"clearly a strategic decision rather than a mere oversight." *Id.* Montez cannot resurrect this argument on appeal.[2]

### C. The Grand Jury

Montez's third argument is that his conviction was tainted by improper evidence introduced to the grand jury. The improper evidence amounted to a few mistakes in the transcripts of recorded phone calls. This claim lacks merit because "the petit jury's guilty verdict[] render[s] harmless any possible error in the grand jury proceedings." *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004). As we have explained, a rule designed "to protect the innocent from being indicted … should not be enforced by reversing a conviction obtained after trial – because we know, as surely as courts 'know' anything, that the convicted defendant is not a member of the class of beneficiaries of the rule." *United States v. Fountain*, 840 F.2d 509, 515 (7th Cir. 1988). Thus, even assuming that there was error, we will not vacate Montez's conviction on this ground.

### D. Sentencing

Montez's last argument is that the district court erred by applying the Sentencing Guidelines' career-offender enhancement to him, increasing his offense level from 26 to 32. In order to qualify as a career offender under Section 4B1.1 of the Guidelines, a defendant must be over eighteen years of age,

---

[2] Even if Montez had not waived this objection, the gang task force reference would amount to harmless error under this court's precedent. See *Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012) ("As evidence of an officer's experience, assignment, and qualifications, the mere mention that the officer is a gang specialist or assigned to a gang unit typically is appropriate and harmless.").

have committed a crime of violence or a controlled substance offense, and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. There's no dispute that Montez satisfies the first two requirements, but he argues that he hasn't been convicted of two qualifying crimes.

The presentence report indicated that Montez had (among other convictions) a 1985 Illinois conviction for murder and a 2007 Illinois conviction for aggravated battery of an officer. It is undisputed that the murder conviction counts, so the question here is whether aggravated battery of an officer under Illinois law is a "crime of violence" sufficient to satisfy the third requirement of the career-offender Guideline.

At the time of the sentencing, a "crime of violence" was any state or federal crime punishable by more than one year imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Under the framework of *Mathis v. United States*, 136 S. Ct. 2243 (2016),[3] the principal question is whether the statute under which the defendant was convicted is "divisible" or "indivisible." When a statute is "indivisible" such that it "sets out a single set of elements to define a single crime," it is proper to simply "line[] up that crime's elements alongside those of the generic offense [here, the 'crime of violence' definition] and see[] if they match." *Id.* at 2248. Under this "categorical approach," a crime counts as

---

[3] Although *Mathis* was an Armed Career Criminal Act case, courts have observed that the approaches used to apply the career-offender enhancement and the Armed Career Criminal Act are similar and thus that *Mathis* is controlling in a Guidelines case. See *United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016)

crime of violence "if its elements are the same as, or narrower than" that definition. *Id.*

Some criminal statutes, however, "have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Id.* at 2249. "A single statute may list elements in the alternative, and thereby define multiple crimes." *Id.* To deal with this problem, the Court developed the "modified categorical approach," whereby "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* The sentencing court then performs the same analysis as in the categorical approach, comparing the elements of that particular crime to the elements required for a "crime of violence." *Id.*

The Illinois aggravated battery statute under which Montez was convicted read, "[i]n committing a battery, a person commits aggravated battery if he or she ... knows the individual harmed to be an officer or employee of ... a unit of local government." 720 ILCS 5/12-4(b)(18). The underlying battery statute said that "[a] person commits battery if he intentionally or knowingly without legal justification and by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *Id.* 5/12-3(a). We have held that this statute is divisible and that violation of the first clause (the bodily harm clause) is a crime of violence, while violation of the second is not. See *Stanley v. United States*, 827 F.3d 562, 566 (7th Cir. 2016); *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973–74 (7th Cir. 2010). Thus, the career-offender enhancement was

proper if Montez was convicted under the statute's first clause.

Generally, "[t]he scope of our inquiry [into the precise crime committed] is limited to (1) admissions made by the defendant, and (2) the charging document, plea agreement, plea colloquy, and comparable judicial records from the conviction." *Rodriguez-Gomez*, 608 F.3d at 973 (citing *Shepard v. United States*, 544 U.S. 13, 16 (2005)). Montez objects that the government produced no document showing the facts of his conviction that would satisfy the requirements of *Shepard*. However, he did not contest the facts contained in the presentence report, which said that the aggravated battery charge was based upon his kicking a police officer in the chest several times and in the face once. The government's failure to rely on *Shepard* documents isn't error where the defendant "didn't question the accuracy of the summary in the presentence investigation report." *United States v. Aviles-Solarzano*, 623 F.3d 470, 475 (7th Cir. 2010). That is because "[t]here is no reason to go digging for a state-court indictment if the parties agree on what it says." *Id.* Thus, Montez's *Shepard* argument fails and we will treat the facts admitted in the presentence report as accurate.

In conclusion, because uncontested findings in the presentence report indicate that Montez was indeed convicted under the aggravated battery statute's bodily harm clause, the district court did not err by applying the career-offender enhancement in this case.

### III. Conclusion

For the reasons stated above, the district court did not err and we will not disturb Montez's conviction and sentence.

AFFIRMED